# EXHIBIT 11

Ex. 12-001

*Via E-mail*
Elizabeth J. Shapiro
Tyler Becker
Benjamin S. Kurland
ben.kurland@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005

*Counsel for U.S. Department of Agriculture and Secretary of Agriculture Brooke L. Rollins*

   RE:  Response to February 17, 2026 Letter to Plaintiff States from Shiela Corley, Chief of
        Staff, Food, Nutrition, and Consumer Services, U.S. Department of Agriculture

Dear Counsel:

   We write on behalf of Plaintiffs in *State of California v. USDA*, No. 3:25-cv-06310 (N.D.
Cal.). This letter, and its attached redlined protocol, respond to the further revised proposed
protocol that USDA/FNS sent to Plaintiff States last week on February 17, 2026 (the "February
17 proposed protocol"). As set forth in the attached document, Plaintiff States request some
revisions to USDA's February 17 proposed protocol, primarily to ensure compliance with 7
U.S.C. § 2020(e)(8). We have provided our rationale in comments to the redline. To the extent
USDA disagrees with any of our proposals, we request the opportunity to meet and confer with
USDA to try to resolve any remaining disagreements.

   With respect to 7 U.S.C. § 2020(e)(8), in particular, we hope our requested revisions will
be noncontroversial, as each aligns the protocol with the applicable statutory and regulatory
structure and the Court's rulings and tentative rulings in our litigation, as well as USDA's
representations about how it intends to use and share the data and prior data sharing agreements.

   First, we have requested revisions to section 1.4 to make clear that USDA and FNS (and
any person or entity to whom the data is disclosed) will abide by 7 U.S.C. § 2020(e)(8)'s data use
and disclosure restrictions. As drafted, the reference in section 1.4 of USDA's February 17
proposed protocol to "State Plans of Operation" creates ambiguity as to whether USDA is taking
the position that *its* data use and disclosure is not restricted by 7 U.S.C. § 2020(e)(8). The Food
and Nutrition Act's data use and disclosure restrictions would be meaningless if once USDA or
third parties collected the data that data could then be freely re-disclosed to persons and for
purposes prohibited by the statute. Accordingly, the Court has already ruled that this provision
does not merely restrict state plans; it also imposes "strict limitations" on "the *recipient*['s] . . .
use of" information covered by this statute. ECF No. 106 at 18; *see* ECF No. 131 at 47-48 (Feb.
13, 2026 Hr'g Tr.).

1

Ex. 12-002

Second, we have requested revisions to section 1.4 to make clear that 7 U.S.C. § 2020(e)(8) does not permit the use or disclosure of data for purposes of investigating potential violations of civil immigration laws or enforcing civil immigration laws. The Food and Nutrition Act (FNA) permits applicant data to be used and disclosed only for purposes of "administration or enforcement" of the FNA or Federal assistance programs. These restrictions would be meaningless if USDA could simply collect all States' data and redisclose it to DHS or its subagencies whenever they request it. USDA has now repeatedly stated that "it does not *intend* to share the data it collects with outside agencies for purposes other than administering and enforcing SNAP," *see* ECF No. 118 at 9 (emphasis added); *accord id.* at 13, 14, but it has yet to commit that it will not share the data with the Department of Homeland Security (DHS) or its subagencies for immigration enforcement purposes. Our requested revisions to section 1.4 (and requested conforming revisions to other sections throughout) would ensure that USDA can use and share the data for lawful purposes consistent with USDA's representations, while also ensuring that the data is not unlawfully used or disclosed in circumstances not permitted by the FNA.

We have also proposed amendments to the data elements proposed in Attachment A of the USDA's November 24, 2025 data demand, including to reduce the amount of personal identifiable information unnecessarily disclosed, in accordance with section 2.2.2 of the February 17 proposed protocol. Please note that certain other elements listed in Attachment A may not be available in and/or extractable from every state system in the form requested by USDA. We anticipate that USDA would discuss these limitations, and any other state-specific issues, with individual States prior to any future data production.

Finally, this counterproposal should not be viewed as a waiver of any rights asserted in the litigation *State of California v. USDA* or a concession as to the legality of the data demand, and we expect that any final protocol will likely need to incorporate issues addressed by the District Court in its forthcoming preliminary injunction decision. In addition, the legality of USDA's SNAP data collection efforts is the subject of *Pallek v Rollins*, No. 1:25-cv-1650 (D.D.C.), and the parties may need to address and incorporate any ruling from that court into a proposed or finalized resolution of USDA's data sharing request.

Ex. 12-003

Thank you for your attention to this matter.

Dated: February 25, 2026

Rob Bonta
Attorney General of California

*/s/ Liam E. O'Connor*
Liam E. O'Connor

Paul Stein
Robin Goldfaden
Supervising Deputy Attorneys General
Andrew Z. Edelstein
Anna Rich
Jane Reilley
Sebastian Brady
William Bellamy
Maria F. Buxton
Liam E. O'Connor
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3915
Liam.OConnor@doj.ca.gov
*Attorneys for Plaintiff State of California*

Letitia James
Attorney General of New York

*/s/ Mark Ladov*
Mark Ladov
Special Counsel
Julie Dona
Special Counsel
28 Liberty St.
New York, NY 10005
(212) 416-8240
mark.ladov@ag.ny.gov
*Attorneys for Plaintiff State of New York*

Kwame Raoul
Attorney General of Illinois

*/s/ Sherief Gaber*
Harpreet K. Khera
Bureau Chief, Special Litigation
Sherief Gaber
Assistant Attorney General
115 S. LaSalle St., 35th Flr.
Chicago, Illinois 60603
(773) 590-7127
sherief.gaber@ilag.gov
*Attorneys for Plaintiff State of Illinois*

Kristin Mayes
Attorney General of Arizona

*/s/ Hayleigh S. Crawford*
Hayleigh S. Crawford (AZ No. 032326)
Luci D. Davis (AZ No. 035347)
2005 N. Central Ave. Phoenix, AZ 85004
(602) 542-3333
Hayleigh.Crawford@azag.gov
Luci.Davis@azag.gov
ACL@azag.gov
*Attorneys for Plaintiff State of Arizona*

Philip J. Weiser
Attorney General of Colorado

*/s/ David Moskowitz*
David Moskowitz
Deputy Solicitor General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6000
david.moskowitz@coag.gov
*Attorneys for Plaintiff State of Colorado*

3

Ex. 12-004

William Tong
Attorney General of Connecticut

/s/ Janelle R. Medeiros
Janelle R. Medeiros
Special Counsel for Civil Rights
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Janelle.Medeiros@ct.gov
Attorneys for Plaintiff State of Connecticut

Kathleen Jennings
Attorney General of Delaware

/s/ Vanessa L. Kassab
Ian R. Liston
Director of Impact Litigation
Vanessa L. Kassab
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov
Attorneys for Plaintiff State of Delaware

Brian L. Schwalb
Attorney General for the District of Columbia

/s/ Nicole S. Hill
Nicole S. Hill
Assistant Attorney General
Office of the Attorney General for the District
of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 727-4171
nicole.hill@dc.gov
Attorneys for Plaintiff District of Columbia

Anne E. Lopez
Attorney General of Hawaiʻi

/s/ Kalikoʻonālani D. Fernandes
David D. Day
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov
Attorneys for Plaintiff State of Hawaiʻi

Office of The Governor ex rel. Andy Beshear,
in his official capacity as Governor of the
Commonwealth of Kentucky

/s/ S. Travis Mayo
S. Travis Mayo
General Counsel
Taylor Payne
Chief Deputy General Counsel
Laura C. Tipton
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov
Attorneys for Plaintiff Kentucky Governors'
Office

Aaron M. Frey
Attorney General of Maine

/s/ Brendan Kreckel
Brendan Kreckel
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 0433-0006
Tel.:  207-626-8800
Fax:  207-287-3145
brendan.kreckel@maine.gov
Attorneys for Plaintiff State of Maine

4

Ex. 12-005

Anthony G. Brown
Attorney General of Maryland

/s/ James C. Luh
James C. Luh
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

Andrea Joy Campbell
Attorney General of Massachusetts

/s/ Katherine Dirks
Katherine Dirks
Chief State Trial Counsel
Cassandra Thomson
Assistant Attorney General
Office of the Massachusetts Attorney General
1 Ashburton Place Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
cassandra.thomson@mass.gov
*Attorneys for Plaintiff Commonwealth of Massachusetts*

Dana Nessel
Attorney General of Michigan

/s/ Neil Giovanatti
Neil Giovanatti
Bryan Beach
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
giovanattin@michigan.gov
beachb@michigan.gov
*Attorneys for Plaintiff State of Michigan*

Keith Ellison
Attorney General of Minnesota

/s/ Joseph R. Richie
Joseph R. Richie
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-0921
joseph.richie@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*

Jennifer Davenport
Attorney General of New Jersey

/s/ Kashif T. Chand
Kashif T. Chand (NJ Bar No. 016752008)
Assistant Attorney General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
kashif.chand@law.njoag.gov
*Attorneys for Plaintiff State of New Jersey*

Raúl Torrez
Attorney General of the State of New Mexico

/s/ Steven Prefrement
Steven Perfrement
Senior Litigation Counsel
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
SPerfrement@nmdoj.gov
505-601-7727
*Attorneys for the State of New Mexico*

Ex. 12-006

Dan Rayfield
Attorney General of Oregon

*/s/ Scott P. Kennedy*
Scott P. Kennedy
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 453-9050
Fax (971) 673-5000
Scott.Kennedy@doj.oregon.gov
*Attorneys for Plaintiff State of Oregon*

Josh Shapiro, in his official capacity as
Governor of the Commonwealth of
Pennsylvania

*/s/ Jacob B. Boyer*
Jennifer Selber
General Counsel
Jacob B. Boyer
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov
*Counsel for Governor Josh Shapiro*

Peter F. Neronha
Attorney General of Rhode Island

/s/ *Madeline R. Becker*
Madeline R. Becker (RI Bar No. 10034)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2151
mbecker@riag.ri.gov
*Attorneys for Plaintiff State of Rhode Island*

Nicholas W. Brown
Attorney General of Washington

*/s/ Jennifer K. Chung*
Jennifer K. Chung, WSBA #51583
William Mcginty, WSBA #41868
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
jennifer.chung@atg.wa.gov
william.mcginty@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

Joshua l. Kaul
Attorney General of Wisconsin

*/s/ Karla Z. Keckhaver*
Karla Z. Keckhaver
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-6365
karla.keckhaver@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*

Ex. 12-007

# Attachment 1

# Plaintiffs' proposed revised protocol

Ex. 12-008



**U.S. DEPARTMENT OF AGRICULTURE**

**Supplemental Nutrition Assistance Program (SNAP) Information Database
Fraud, Waste and Abuse Detection Protocol**

## 1. OVERVIEW

1.1. U.S. Department of Agriculture (USDA) and the Food and Nutrition Service (FNS) will use the Supplemental Nutrition Assistance Program (SNAP) recipient data to ensure the integrity of Government programs, including by verifying SNAP recipient eligibility against federally maintained databases, identifying duplicate enrollments for elimination, and performing additional eligibility and program integrity checks specified herein.

1.2. This protocol establishes a framework for State SNAP agencies to share data with the USDA/FNS for detection of fraud, waste, and abuse and program integrity purposes.

1.3. USDA represents that the protocol balances federal data access requirements under Executive Order 14243 and the Food and Nutrition Act of 2008 (FNA, also referred to here as the "SNAP Act") with privacy protections, minimizes unnecessary data collection, and incorporates security standards while maintaining public trust and compliance with applicable law.

1.4. Notwithstanding any other provision of this protocol, or any System of Record Notice, USDA and FNS: (a) shall not use or disclose data received under this protocol except as specified in 7 U.S.C. §§ 2020(a)(3) and (e)(8) and 7 C.F.R. § 272.1(c)(1) and (2). For the avoidance of doubt, this means that USDA and FNS (and any person or entity to whom the data is disclosed) shall not:

   (i)   use the data, except for administration or enforcement of the provisions of Chapter 51 of Title 7 of the U.S. Code and regulations issued pursuant to that chapter, Federal assistance programs, or federally-assisted State programs;

   (ii)  disclose the data, except to persons directly connected with the administration or enforcement of the provisions of this chapter, regulations issued pursuant to this chapter, Federal assistance programs, or federally-assisted State programs; and only so that such persons can subsequently use the data for such administration or enforcement;

   (iii) use or disclose data for purposes of investigating potential violations of civil immigration laws or enforcing civil immigration laws, including but not limited to in response to a request by the Department of Homeland Security or a subagency thereof.

1.5 USDA acknowledges that the data shared under this Protocol is subject to federal and state confidentiality, privacy, and information security laws and regulations. Unauthorized access to, use of, or disclosure of such data, or failure to protect such data in accordance with applicable law, may subject the responsible party and, where applicable, individual users to civil or criminal penalties under federal or state law.

## 2. FRAMEWORK AND AUTHORITY

2.1. <u>Authority</u>

   2.1.1. Executive Order 14243 (March 20, 2025): "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos" directs agency heads to "take all necessary steps, to the maximum extent consistent with law," to ensure federal government has "unfettered access to comprehensive data" from state programs receiving federal funding, including data maintained in third-party databases.

   2.1.2. 7 U.S.C. § 2020(a)(3) requires that each State agency shall keep records as may be necessary to determine whether the program is being conducted in compliance with this chapter, and all records

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

**Ex. 12-009**



## U.S. DEPARTMENT OF AGRICULTURE

shall be made available for inspection and audit by the Secretary, subject to data and security protocols agreed to by the State agency and Secretary.

2.1.3. 7 CFR 272 stipulates use or disclosure of information obtained from SNAP applicant or recipient households shall be restricted to persons directly connected with the administration or enforcement of the provisions of the FNA or regulations, other Federal assistance programs, federally-assisted State programs providing assistance on a means-tested basis to low-income individuals, or general assistance programs which are subject to joint processing requirements.

2.2. <u>Prohibited Purposes</u>

2.2.1. USDA shall NOT use the provided data for:

- Tax administration or tax compliance

- Law enforcement investigations beyond coordination regarding SNAP fraud, or other violations of the FNA and regulations implementing the FNA.

- Administration of non-SNAP federal assistance programs (*e.g.*, Medicaid, TANF, housing assistance)

- Sharing with foreign governments or international organizations

- Commercial use or transfer to private entities

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Ex. 12-010



**U.S. DEPARTMENT OF AGRICULTURE**

2.2.2. USDA shall collect only the data elements necessary to achieve specific, legally permissible goals, such as fraud detection, duplicate enrollment prevention, and program integrity checks. The scope of data collection shall be limited by excluding sensitive PII unless directly relevant to these goals (*i.e.*, the collection of data elements spelled out in the Privacy Impact Assessment).

## 3. DATA CATEGORIES

3.1. <u>Data Definition</u>

3.1.1. All data obtained by States in administering SNAP or that otherwise may be necessary to determine whether the program is being conducted in accordance with the FNA or regulations issued under the FNA, in accordance with Attachment A to this protocol and any other state-specific terms negotiated and mutually agreed to by each state and USDA based on each state's data collection and storage realities.

3.1.2. Data derived from third-party sources (employment verification databases, financial institution records, property records) that States use for verification but are not part of applicant-reported information are excluded.

## 4. LIMITED ACCESS

4.1. The SNAP Information Database and all data collected therein is accessed and used ONLY by employees of the USDA who are:

4.1.1. Designated by the Chief of Staff at Food, Nutrition, Consumer Services (FNCS)

4.1.2. Trained in SNAP Act, Privacy Act, and this protocol

4.1.3. In compliance with all information security annual recertifications

4.2. Except to the extent required by law, no access to, or disclosures of data from, the SNAP Information Database may be provided to:

4.2.1. Other USDA agencies (APHIS, ERS, NASS, etc.)

4.2.2. Divisions within FNS without an explicit need-to-know

4.2.3. OIG employees, unless in direct support of a law enforcement investigation related to SNAP fraud, waste, or abuse

4.2.4. Any other federal agency

4.2.5. Any FOIA, administrative subpoena or like external requester

4.3 For the reasons explained in Section 1.4, above, no access to, or disclosures of data from, the SNAP Information Database may be provided to the Department of Homeland Security or any subagency thereof for purposes of investigating potential violations of civil immigration laws or enforcing civil immigration laws.

4.4. USDA shall provide each state agency, on an ongoing basis and upon request, with a list of all parties who have requested access to this data, and a list of all users who have been granted access to the provided data.

## 5. SYSTEM OF RECORDS NOTICE (SORN) AND PRIVACY IMPACT ASSESSMENT (PIA)

5.1. <u>SORN</u>

The applicable SORN for this protocol is USDA/FNS-15 "National Supplemental Nutrition Assistance Program (SNAP) Information Database," 90 FR 26521.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Ex. 12-011

 **U.S. DEPARTMENT OF AGRICULTURE**

The SORN location can be found here:
https://www.federalregister.gov/documents/2025/06/23/202511463/privacy-act-of-1974-system-of-records

For the avoidance of doubt, this protocol controls notwithstanding any provision of the applicable SORN.

5.2. Privacy Impact Assessment (PIA)

The applicable Privacy Impact Assessment for the SNAP Information Database is Version 1.1 created 02/12/2025, which can be found here:
https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf

For the avoidance of doubt, this protocol controls notwithstanding any provision of the PIA.

## 6. FRAUD, WASTE, AND ABUSE DETECTION FRAMEWORK

6.1. Core Fraud Detection Functions

6.1.1. USDA will employ a foundational fraud, waste, and abuse verification similar to the SNAP Quality Control program that focuses on:

- identity verification

- income and eligibility verification

- immigration status

- verification against disqualified recipients

6.2. Enhanced Fraud, Waste, and Abuse Detection Techniques

6.2.1. In addition to the core fraud detection functions, USDA will employ additional techniques including, but not limited to:

- Intrastate and interstate duplicate detection

- Deceased individuals' detection

- Synthetic identity patterns (new SSNs with inconsistent biographical data)

- Geographic anomalies

6.2.2. New data mining techniques will be limited to identifying recipient and retailer data anomalies with a direct nexus to SNAP.

## 7. DATA OUTPUT

7.1. States

7.1.1. USDA will provide flagged data back to the State agency for review, including the specific data elements flagged and source of the data that generated the flag. States are encouraged to verify the accuracy of fraud detection flags and provide feedback to USDA to refine detection logic and reduce false positives. Collaborative processes will be established to ensure accurate identification of fraud and appropriate corrective actions, including processes to allow individuals to contest inaccurate information and require updates to the originating system of record where false positives are identified. No presumptive results shall be made public prior to verification by State agency of the accuracy of the detection flags.

7.2. Law Enforcement

7.2.1. The USDA may refer fraud detection leads to USDA OIG and other law enforcement agencies where a criminal nexus has been drawn specifically to SNAP in accordance with 7 U.S.C § 2020(e)(8)(A) and USDA's regulation implementing that provision, 7 C.F.R. § 272.1(c)(1).

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Ex. 12-012



**U.S. DEPARTMENT OF AGRICULTURE**

7.3. USDA SNAP Retailer Operations Center (ROC)

7.3.1. The USDA may refer fraud detection leads to the ROC where, during fraud detection analysis, a compromised EBT card or terminal ID may have been identified in accordance with 7 U.S.C § 2020(e)(8)(A) and USDA's regulation implementing that provision, 7 C.F.R. § 272.1(c)(1).

## 8. DATA MINIMIZATION AND RETENTION

8.1. Retention Period

8.1.1. Until a record schedule is approved, data will be retained only as long as necessary for purposes set forth in the SORN and this protocol, and in no case longer than 3 years per the SORN.

8.2. Automatic Deletion

8.2.1. Data shall be retained for no longer than three years, consistent with the USDA/FNS-15 SORN. An automated process will be implemented to delete data upon expiration of the retention period, except for records related to ongoing audits, investigations, or litigation.

8.3. Ongoing Cases

8.3.1. Data pertaining to ongoing audit, investigation, or potential litigation retained only as long as necessary, then deleted.

## 9. DATA SECURITY AND TECHNICAL REQUIREMENTS

9.1. Infrastructure and Location

9.1.1. Primary storage location: AWS GovCloud (US) region

9.1.2. Backup/disaster recovery: Secondary AWS region

9.1.3. No storage, processing, or backup outside GovCloud or federal secure environments

9.1.4. All infrastructure must meet or exceed FedRAMP High baseline standards

9.1.5. AWS Personnel Access: Data is encrypted such that AWS personnel cannot access unencrypted data. Encryption keys are managed exclusively by federal USDA personnel and are not accessible to AWS or third-party vendors.

9.2. Access Controls

9.2.1. Multi-factor authentication required for all access

9.2.2. Role-based access control (RBAC) with principle of least privilege

9.2.3. Access is limited to specifically designated USDA employees engaged to assist in determining whether the program is being conducted in accordance with the FNA.

9.2.4. Access logging and audit trail maintenance (minimum period equal to data retention period, see Section V.E).

9.2.5. Quarterly access reviews by USDA

9.2.6. Immediate revocation of access upon employee termination or assignment change

9.3. Encryption Standards

9.3.1. Encrypted data at rest and in transit

9.3.2. Encryption keys managed solely by USDA federal personnel

9.3.3. No encryption keys held by commercial vendors

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Ex. 12-013

 **U.S. DEPARTMENT OF AGRICULTURE**

9.4. Data Segregation and Compartmentalization

9.4.1. SNAP data isolated in separate, dedicated AWS GovCloud environment

9.4.2. SNAP data not directly integrated with other USDA systems

9.4.3. Limiting access to individuals with specialized training and oversight

9.5. Data Transfer

9.5.1. All data transfers shall utilize secure tools that meet or exceed FedRAMP High baseline standards.

## 10. INCIDENT RESPONSE AND BREACH NOTIFICATION

10.1. Incident Response

10.1.1. Incident response procedures are aligned with FNS Handbook Chapter 10 security incident and breach notification requirements that USDA already follows internally. This protocol extends equivalent procedures to State notification.

10.2. Incident Definition

10.2.2. Unauthorized access, use, or disclosure of data

10.2.3. Security vulnerability or control failure affecting data

10.2.4. Data loss, corruption, or destruction

10.2.5. Encryption failure or key compromise

10.2.6. Failed access control or authentication mechanism

10.2.7. Any event that may reasonably be expected to compromise data security or confidentiality, including any request for use of, access to, or disclosure of data outside the permitted circumstances set forth in Section 1.4

10.3. Incident Notification Timeline

10.3.1. Initial Notification within 12 hours

10.3.1.1.   Within 12 hours of discovery (by phone + email to State security/privacy contact and Director).

10.3.2. Preliminary Report within 24 hours

10.3.2.1.   Description of incident and timeline

10.3.2.2.   Data elements affected (specific fields and estimated number of records)

10.3.2.3.   Estimated number of individuals affected

10.3.2.4.   Preliminary assessment of whether unencrypted sensitive data may have been exposed

10.3.2.5.   Preliminary remedial actions taken

10.3.2.6.   Root cause analysis plan and timeline

10.3.3 Progress Reports and Incident Close-out

10.3.3.1   USDA shall provide supplemental progress updates to state agencies as material information becomes available, but in no event less frequently than every 14 days, including refinements to scope, impact, and remediation measures, until the Incident is resolved. Upon resolution, USDA shall provide a close-out report of the Incident.

10.3.3.2   USDA shall provide notice to affected individuals in compliance with all applicable federal breach response and notification requirements, including but not limited to FISMA and

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Ex. 12-014



**U.S. DEPARTMENT OF AGRICULTURE**

OMB Memorandum M-17-12. Nothing in this protocol shall be construed to shift responsibility for individual breach notification to the state agency.

**APPENDIX A - SOURCES**

- 7 U.S.C. §§ 2020(a)(3) and (e)(8).

- Privacy Impact Assessment: https://www.usda.gov/sites/default/files/documents/fns-snap-informationdatabase-pia.pdf

- SORN: https://www.federalregister.gov/documents/2025/06/23/2025-11463/privacy-act-of-1974-systemof-records

- SNAP Act: https://www.law.cornell.edu/uscode/text/7/2020

- SNAP QC Handbook

- Executive Order 14243 (March 20, 2025) "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos: https://www.govinfo.gov/content/pkg/DCPD-202500382/pdf/DCPD-202500382.pdf

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Ex. 12-015

# Attachment 2

# Plaintiffs' proposed revised protocol (redline)

Ex. 12-016



**U.S. DEPARTMENT OF AGRICULTURE**

**Supplemental Nutrition Assistance Program (SNAP) Information Database
Fraud, Waste and Abuse Detection Protocol**

## 1. OVERVIEW

1.1. U.S. Department of Agriculture (USDA) and the Food and Nutrition Service (FNS) will use the Supplemental Nutrition Assistance Program (SNAP) recipient data to ensure the integrity of Government programs, including by verifying SNAP recipient eligibility against federally maintained databases, identifying duplicate enrollments for elimination, and performing additional eligibility and program integrity checks specified herein.

1.2. This protocol establishes a framework for State SNAP agencies to share data with the USDA/FNS for detection of fraud, waste, and abuse and program integrity purposes.

1.3. ~~USDA represents that t~~The protocol balances federal data access requirements under Executive Order 14243 and the Food and Nutrition Act of 2008 (FNA, also referred to here as the "SNAP Act") with privacy protections, minimizes unnecessary data collection, and incorporates security standards while maintaining public trust and compliance with applicable law.

1.4. Notwithstanding any other provision of this protocol, or any System of Record Notice, USDA and FNS:
(a) shall not use or disclose data received under this protocol except as specified in 7 U.S.C. §§ 2020(a)(3) and (e)(8) and 7 C.F.R. § 272.1(c)(1) and (2). For the avoidance of doubt, this means that USDA and FNS (and any person or entity to whom the data is disclosed) shall not: ~~that includes the specific requirements in 7 U.S.C § 2020(e)(8)(A), which provides that State Plans of Operation must include safeguards protecting information obtained from applicant households that shall permit~~

  (i)   use the data, except for administration or enforcement of the provisions of Chapter 51 of Title 7 of the U.S. Code and regulations issued pursuant to that chapter, Federal assistance programs, or federally-assisted State programs; ~~and~~

  (i)   ~~disclose the data, except to~~ ~~the disclosure of such information to~~ persons directly connected with the administration or enforcement of the provisions of this chapter, regulations issued pursuant to this chapter, Federal assistance programs, or federally-assisted State programs; and only so that such persons can subsequently use the data ~~; and~~

  (ii)  ~~the subsequent use of the information by persons described in clause (i) only~~ for such administration or enforcement:

  (iii) use or disclose data for purposes of investigating potential violations of civil immigration laws or enforcing civil immigration laws, including but not limited to in response to a request by the Department of Homeland Security or a subagency thereof.

1.5  USDA acknowledges that the data shared under this Protocol is subject to federal and state confidentiality, privacy, and information security laws and regulations. Unauthorized access to, use of, or disclosure of such data, or failure to protect such data in accordance with applicable law, may subject the responsible party and, where applicable, individual users to civil or criminal penalties under federal or state law.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

**Ex. 12-017**



**U.S. DEPARTMENT OF AGRICULTURE**

**2. FRAMEWORK AND AUTHORITY**

2.1. <u>Authority</u>

2.1.1. Executive Order 14243 (March 20, 2025): "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos" directs agency heads to "take all necessary steps, to the maximum extent consistent with law," to ensure federal government has "unfettered access to comprehensive data" from state programs receiving federal funding, including data maintained in third-party databases.

2.1.2. 7 U.S.C. § 2020(a)(3) ~~that~~ requires that each State agency shall keep records as may be necessary to determine whether the program is being conducted in compliance with this chapter, and all records shall be made available for inspection and audit by the Secretary, subject to data and security protocols agreed to by the State agency and Secretary.

2.1.3. 7 CFR 272 stipulates use or disclosure of information obtained from SNAP applicant or recipient households shall be restricted to persons directly connected with the administration or enforcement of the provisions of the FNA or regulations, other Federal assistance programs, federally-assisted State programs providing assistance on a means-tested basis to low-income individuals, or general assistance programs which are subject to joint processing requirements.

2.2. <u>Prohibited Purposes</u>

2.2.1. USDA shall NOT use the provided data for:

- Tax administration or tax compliance
- Law enforcement investigations beyond coordination regarding SNAP fraud, or other violations ~~relating to~~<u>of</u> the FNA <u>and regulations implementing the FNA</u>.
- Administration of non-SNAP federal assistance programs (*e.g.*, Medicaid, TANF, housing assistance)
- Sharing with foreign governments or international organizations
- Commercial use or transfer to private entities

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Ex. 12-018

 **U.S. DEPARTMENT OF AGRICULTURE**

2.2.2. USDA shall collect only the data elements necessary to achieve specific, legally permissible goals, such as fraud detection, duplicate enrollment prevention, and program integrity checks. The scope of data collection shall be limited by excluding sensitive PII unless directly relevant to these goals (*i.e.*, the collection of data elements spelled out in the Privacy Impact Assessment).

## 3. DATA CATEGORIES

3.1. <u>Data Definition</u>

3.1.1. All data obtained by States ~~or their vendors~~ in administering SNAP or that otherwise may be necessary to determine whether the program is being conducted in accordance with the FNA or regulations issued under the FNA, <u>in accordance with Attachment A to this protocol and any other state-specific terms</u> <u>negotiated and mutually agreed to by each state and USDA based on each state's data collection and storage realities</u>.

3.1.2. Data derived from third-party sources (employment verification databases, financial institution records, property records) that States use for verification but are not part of applicant-reported information are excluded.

~~3.2. Permitted Data~~

~~• Information that the applicant household reported on application/recertification forms including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers.~~

~~• Direct verifications that the State conducted to confirm applicant-reported information Records that the State maintains of SNAP applications, approvals, denials, certifications, and benefits issued.~~

~~• Household composition and income exactly as reported by the applicant (not third-party verified amounts).~~

~~• Transactional data necessary for fraud detection~~

## 4. LIMITED ACCESS

4.1. The SNAP Information Database <u>and all data collected therein</u> is accessed and used ONLY by employees of the USDA who are:

4.1.1. Designated by the Chief of Staff at Food, Nutrition, Consumer Services (FNCS)

4.1.2. Trained in SNAP Act, Privacy Act, and this protocol

4.1.3. In compliance with all information security annual recertifications

4.2. Except to the extent required by law, no access to<u>, or disclosures of data from,</u> the SNAP Information Database may be provided to:

4.2.1. Other USDA agencies (APHIS, ERS, NASS, etc.)

4.2.2. Divisions within FNS without an explicit need-to-know

4.2.3. OIG employees, unless in direct support of a law enforcement investigation related to SNAP fraud, waste, or abuse

4.2.4. Any other federal agency

4.2.5. Any FOIA, administrative subpoena or like external requester

**Commented [A1]:** Plaintiffs anticipate that each State will have different proposed edits to Attachment A, based on State-specific approaches to sharing PII, as well as State-specific data collection and access requirements. Therefore, States will need to address these issues separately once an agreed-upon protocol is in place.

**Commented [A2]:** Plaintiffs do not understand what this section of the protocol intends to convey if the data elements are set forth in Attachment A and therefore request that this section be deleted.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

**Ex. 12-019**


**U.S. DEPARTMENT OF AGRICULTURE**

4.3  For the reasons explained in Section 1.4, above, no access to, or disclosures of data from, the SNAP Information Database may be provided to the Department of Homeland Security or any subagency thereof for purposes of investigating potential violations of civil immigration laws or enforcing civil immigration laws.

4.4.  USDA shall provide each state agency, on an ongoing basis and upon request, with a list of all parties who have requested access to this data, and a list of all users who have been granted access to the provided data.

**Commented [A3]:** This provision is modeled after similar provisions in the Memoranda of Understanding for data sharing between state agencies and USDA/FNS.  For example, provision (7) of a standard 2018 eDRS agreement states: "In the event that USDA/FNS or the State Agency discloses [Sensitive but Unclassified Information] or PII to any authorized person not originally identified by either party, USDA/FNS and/or the State Agency will notify the appropriate Federal or State entity as to the identity of each person to whom disclosure is made, that such disclosure is made in accordance with all applicable laws and regulations and obligations outlined in this MOU, and that the contents of the disclosure shall be protected as outlined in the MOU."  *See California v. USDA*, 25-cv-6310 (N.D. Cal.), ECF No. 116-3 at 74.

**5. SYSTEM OF RECORDS NOTICE (SORN) AND PRIVACY IMPACT ASSESSMENT (PIA)**

5.1. SORN

The applicable SORN for this protocol is USDA/FNS-15 "National Supplemental Nutrition Assistance Program (SNAP) Information Database," 90 FR 26521.

The SORN location can be found here:
https://www.federalregister.gov/documents/2025/06/23/202511463/privacy-act-of-1974-system-of-records

For the avoidance of doubt, this protocol controls notwithstanding any provision of the applicable SORN that conflicts with 7 U.S.C. §§ 2020(a)(3) and (e)(8).

5.2. Privacy Impact Assessment (PIA)

The applicable Privacy Impact Assessment for the SNAP Information Database is Version 1.1 created 02/12/2025, which can be found here:
https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf

For the avoidance of doubt, this protocol controls notwithstanding any provision of the PIA.

**6. FRAUD, WASTE, AND ABUSE DETECTION FRAMEWORK**

6.1. Core Fraud Detection Functions

6.1.1. USDA will employ a foundational fraud, waste, and abuse verification similar to the SNAP Quality Control program that focuses on:

- identity verification
- income and eligibility verification
- immigration status
- verification against disqualified recipients

6.2. Enhanced Fraud, Waste, and Abuse Detection Techniques

6.2.1. In addition to the core fraud detection functions, USDA will employ additional techniques including, but not limited to:

- Intrastate and interstate duplicate detection
- Deceased individuals' detection
- Synthetic identity patterns (new SSNs with inconsistent biographical data)
- Geographic anomalies

6.2.2. New data mining techniques will be limited to identifying recipient and retailer data anomalies fraud with a direct nexus to SNAP.

**7. DATA OUTPUT**

7.1. States

7.1.1. USDA will provide flagged data back to the State agency for review, including the specific data elements flagged and source of the data that generated the flag. States are encouraged to verify the accuracy of

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

**Ex. 12-020**

 **U.S. DEPARTMENT OF AGRICULTURE**

fraud detection flags and provide feedback to USDA to refine detection logic and reduce false positives. Collaborative processes will be established to ensure accurate identification of fraud and appropriate corrective actions, including processes to allow individuals to contest inaccurate information and require updates to the originating system of record where false positives are identified. No presumptive results shall be made public prior to verification by State agency of the accuracy of the detection flags.

7.2. Law Enforcement

    7.2.1. The USDA may refer fraud detection leads to USDA OIG and other law enforcement agencies where a criminal nexus has been drawn specifically to SNAP in accordance with 7 U.S.C § 2020(e)(8)(A) and USDA's regulation implementing that provision, 7 C.F.R. § 272.1(c)(1).

7.3. USDA SNAP Retailer Operations Center (ROC)

    7.3.1. The USDA may refer fraud detection leads to the ROC where, during fraud detection analysis, a compromised EBT card or terminal ID may have been identified in accordance with 7 U.S.C § 2020(e)(8)(A) and USDA's regulation implementing that provision, 7 C.F.R. § 272.1(c)(1).

## 8. DATA MINIMIZATION AND RETENTION

8.1. Retention Period

    8.1.1. Until a record schedule is approved, data will be retained only as long as necessary for purposes set forth in the SORN and this protocol, and in no case longer than 3 years per the SORN.

8.2. Automatic Deletion

    8.2.1. Data shall be retained for no longer than three years, consistent with the USDA/FNS-15 SORN. An automated process will be implemented to delete data upon expiration of the retention period, except for records related to ongoing audits, investigations, or litigation.

8.3. Ongoing Cases

    8.3.1. Data pertaining to ongoing audit, investigation, or potential litigation retained only as long as necessary, then deleted.

## 9. DATA SECURITY AND TECHNICAL REQUIREMENTS

9.1. Infrastructure and Location

    9.1.1. Primary storage location: AWS GovCloud (US) region

    9.1.2. Backup/disaster recovery: Secondary AWS region

    9.1.3. No storage, processing, or backup outside GovCloud or federal secure environments

    9.1.4. All infrastructure must meet or exceed FedRAMP High baseline standards

    9.1.5. AWS Personnel Access: Data is encrypted such that AWS personnel cannot access unencrypted data. Encryption keys are managed exclusively by federal USDA personnel and are not accessible to AWS or third-party vendors.

9.2. Access Controls

    9.2.1. Multi-factor authentication required for all access

    9.2.2. Role-based access control (RBAC) with principle of least privilege

    9.2.3. Access is limited to specifically designated USDA employees engaged to assist in determining whether the program is being conducted in accordance with the FNA.

    9.2.4. Access logging and audit trail maintenance (minimum period equal to data retention period, see Section V.E).

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

**Ex. 12-021**



**U.S. DEPARTMENT OF AGRICULTURE**

    9.2.5. Quarterly access reviews by USDA

    9.2.6. Immediate revocation of access upon employee termination or assignment change

9.3. <u>Encryption Standards</u>

    9.3.1. Encrypted data at rest and in transit

    9.3.2. Encryption keys managed solely by USDA federal personnel

    9.3.3. No encryption keys held by commercial vendors

9.4. <u>Data Segregation and Compartmentalization</u>

    9.4.1. SNAP data isolated in separate, dedicated AWS GovCloud environment

    9.4.2. SNAP data not directly integrated with other USDA systems

    9.4.3. Limiting access to individuals with specialized training and oversight

9.5. <u>Data Transfer</u>

    9.5.1. All data transfers shall utilize secure tools that meet or exceed FedRAMP High baseline standards.

**10. INCIDENT RESPONSE AND BREACH NOTIFICATION**

10.1. <u>Incident Response</u>

    10.1.1. Incident response procedures are aligned with FNS Handbook Chapter 10 security incident and breach notification requirements that USDA already follows internally. This protocol extends equivalent procedures to State notification.

10.2. <u>Incident Definition</u>

    10.2.2. Unauthorized access, use, or disclosure of data

    10.2.3. Security vulnerability or control failure affecting data

    10.2.4. Data loss, corruption, or destruction

    10.2.5. Encryption failure or key compromise

    10.2.6. Failed access control or authentication mechanism

    10.2.7. Any event that may reasonably be expected to compromise data security or confidentiality, including any request for use of, access to, or disclosure of data outside the permitted circumstances set forth in Section 1.4

10.3. <u>Incident Notification Timeline</u>

    10.3.1. Initial Notification within 12 hours

      10.3.1.1.   Within 12 hours of discovery (by phone + email to State security/privacy contact and Director).

    10.3.2. Preliminary Report within 24 hours

      10.3.2.1.   Description of incident and timeline

      10.3.2.2.   Data elements affected (specific fields and estimated number of records)

      10.3.2.3.   Estimated number of individuals affected

      10.3.2.4.   Preliminary assessment of whether unencrypted sensitive data may have been exposed

      10.3.2.5.   Preliminary remedial actions taken

      10.3.2.6.   Root cause analysis plan and timeline

> **Commented [A4]:** As discussed in prior letters, State agencies have concern that this protocol is a "framework" that lacks sufficient detail for implementation, and that it will need to be accompanied by additional documents (such as an Interconnection Security Agreement and Memorandum of Understanding) that are standard when agencies share data with each other. Our expectation is that if USDA/FNS and a State agency agree on the protocol framework, they will promptly enter into any additional agreements, such as an ISA or MOU, necessary to facilitate the data sharing required by this protocol.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

**Ex. 12-022**



## U.S. DEPARTMENT OF AGRICULTURE

10.3.3 Progress Reports and Incident Close-out

> 10.3.3.1 USDA shall provide supplemental progress updates to state agencies as material information becomes available, but in no event less frequently than every 14 days, including refinements to scope, impact, and remediation measures, until the Incident is resolved. Upon resolution, USDA shall provide a close-out report of the Incident.

> 10.3.3.2 USDA shall provide notice to affected individuals in compliance with all applicable federal breach response and notification requirements, including but not limited to FISMA and OMB Memorandum M-17-12. Nothing in this protocol shall be construed to shift responsibility for individual breach notification to the state agency.

**Commented [A5]:** Plaintiffs' understanding is that these additional notification provisions are routine after a security breach, and since we don't have access to the FNS Handbook Chapter 10 cited above we wanted to spell them out here.

(Per the prior comment, other details like this may need to be spelled out more clearly in the course of state-specific implementation.)

## APPENDIX A - SOURCES

- 7 U.S.C. §§ 2020(a)(3) and (e)(8).
- Privacy Impact Assessment: https://www.usda.gov/sites/default/files/documents/fns-snap-informationdatabase-pia.pdf
- SORN: https://www.federalregister.gov/documents/2025/06/23/2025-11463/privacy-act-of-1974-systemof-records
- SNAP Act: https://www.law.cornell.edu/uscode/text/7/2020
- SNAP QC Handbook
- Executive Order 14243 (March 20, 2025) "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos: https://www.govinfo.gov/content/pkg/DCPD-202500382/pdf/DCPD-202500382.pdf

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Ex. 12-023

# Attachment 3

# Plaintiffs' proposed revised data elements

Ex. 12-024



**U.S. DEPARTMENT OF AGRICULTURE**

**Supplemental Nutrition Assistance Program
Information SNAP Database**

***SNAP Eligibility Data Elements***
The following elements should be included in the data sharing file from each State agency on all benefit recipients that are listed in the SNAP case, to the extent such data is available and extractable from each state system.  For purposes of this document, the term "recipient" refers to individuals currently receiving benefits and individuals who formerly received benefits within the defined retention period, but not to disqualified or excluded individuals.  Please provide a data dictionary if one is available to reduce the burden to both the State agency and USDA.

***Case Number***: The case number is a unique identifier, typically 7 to 10 digits long, assigned to a household or recipient (depending on each state) when they are approved for SNAP.

***First, Middle, Last Names***: The full name of all recipients in the household.

***Known Alias***: Assumed or alternative name(s) used by any of the recipients.

***Date of Birth***: The specific month, day and year the recipient was born.

***Individual Recipient Identification Number***: The unique identifier assigned to that specific benefit recipient within the case by the State agency.

***Social Security Number***: The unique 9-digit identifier issued by the Social Security Administration and provided by the recipient.

***Status on SNAP*** *(recipient/individual level)*: Identify if the recipient in the case is actively receiving SNAP, disqualified, sanctioned, or excluded.

***Application and/or Recertification Date***: The date the recipient applied for SNAP (this can be the first application date, or most recent recertification date).

***Reporting Status***: Following initial certification, or recertification, households are determined to be a simplified or change reporting household. This data element should indicate the reporting status the household is designated to be.

***Relationship:*** The relationship identifies who all recipients in a household are to one another and assists with determining mandatory group members. The data should reflect who each recipient is to one another.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

**Ex. 12-025**

***Citizenship and/or Immigration Status***: This identifies if the recipient is a U.S. citizen or immigrant.

***Sponsorship:*** This identifies if an individual receiving SNAP is known to have been sponsored to enter the U.S.

***Zip code:*** Zip code associated with the recipient's residential address.

***County:*** County associated with the recipient's residential address.

***Homeless Status***: Please include if recipients are identified as homeless.

***Phone Number(s)***: The contact number(s) provided by the recipient as a means of contact.

***Email Address(es)***: The email address(es) provided by the recipient as a means of contact.

***Unearned Income***: The total unearned income (RSDI, unemployment, child support, etc.) amount budgeted to determine the SNAP allotment.

***Earned Income***: The total earned income amount budgeted to determine the SNAP allotment.

***Self-Employment Income***: The total self-employment income budgeted as well as the amount of allowed expenses.

***Shelter Expenses***: The total shelter expenses budgeted dollar amount. Shelter expenses may be separated out as various expenses are taken into consideration for eligibility and those should be included if used in the SNAP allotment determination (i.e. telephone, heating, cooling). If the household is active with Section 8, which pays a portion of the rental expenses, please ensure that is included.

***Assets/Resources***: The total assets reported (e.g.. bank accounts, boat, collector vehicle, etc.) or any resources used to determine SNAP eligibility.

**Ex. 12-026**

***Sanctions/Disqualifications***: Identify any recipients who are serving a sanction and/or disqualification that is impacting their eligibility to participate in SNAP. The sanction and/or disqualification type and any applicable time periods should be identified (i.e. IPV, 10/1/2024-9/30/2025). This field should correspond to the data provided in the status on SNAP if the recipient is currently serving a disqualification, as well as any income field(s) that may pertain to the disqualified member due to income proration.

***SNAP EBT Card Number***: The unique set of digits on the household's issued SNAP EBT card that connects the case to the associated transactions.  For states that issue more than one card to a household, or for households where more than one recipient lives, the state need only provide the digits for the primary card issued to the household.

Ex. 12-027

# Attachment 4

# Plaintiffs' proposed revised data elements (redline)

Ex. 12-028



U.S. DEPARTMENT OF AGRICULTURE

**Supplemental Nutrition Assistance Program**
**Information SNAP Database**

***SNAP Eligibility Data Elements***

The following elements should be included in the data sharing file from each State agency on all ~~household~~ benefit recipients~~members s~~ that are listed in the SNAP case~~,~~- to the extent such data is available and extractable from each state system.  For purposes of this document, the term "recipient" refers to individuals currently receiving benefits and individuals who formerly received benefits within the defined retention period, but not to disqualified or excluded individuals.  Please provide a data dictionary if one is available to reduce the burden to both the State agency and USDA.

***Case Number***: The case number is a unique identifier, typically 7 to 10 digits long, assigned to a household or recipient (depending on each state) when they ~~apply and/or~~ are approved for SNAP.

***First, Middle, Last Names***: The full name of all recipients in the household ~~members~~.

***Known Alias***: Assumed or alternative name(s) used by any of the recipients ~~household members~~.

~~***Authorized Representative(s)***: Provide any identified authorized representative for the household, and their corresponding information such as full name, means of verbal and written communication.~~

***Date of Birth***: The specific month, day and year the ~~household member~~recipient was born.

***Individual Recipient Identification Number***: The unique identifier assigned to that specific ~~household member~~benefit recipient within the case by the State agency.

***Social Security Number***: The unique 9-digit identifier issued by the Social Security Administration and provided by the ~~household member~~recipient.

***Status on SNAP*** *(recipient/individual level)*: Identify if the ~~household member~~recipient in the case is actively receiving SNAP, disqualified, sanctioned, or excluded.

***Application and/or Recertification Date***: The date the ~~household~~ recipient applied for SNAP (this can be the first application date, or most recent recertification date).

***Reporting Status***: Following initial certification, or recertification, households are determined to be a simplified or change reporting household. This data element should indicate the reporting status the household ~~has been~~is designated to be.

> **Commented [A1]:** We have amended this document primarily to propose three changes.
>
> First, we propose limiting data production to SNAP recipients (excluding non-recipient data). Second, we propose submitting zip code and county data in lieu of personal addresses. Both of these amendments are proposed in order to reduce the amount of personal identifiable information (PII) unnecessarily disclosed, in accordance with term 2.2.2 of the February 17 proposed protocol.
>
> Third, as specified below, we propose omitting certain details on income, expenses and assets which, for many states, could not be easily produced in bulk, and which would require production of third-party verification materials excluded by USDA's proposed protocol.

**Ex. 12-029**

*Relationship:* The relationship identifies who all ~~household group~~recipient ~~s~~members in a household are to one another and assists with determining mandatory group members. The data should reflect who each ~~household~~ recipient ~~member~~ is to one another.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Page **2** of **3**

~~*Absent Parent* (as applicable): This identifies the parent of a minor child who resides in a separate household.~~

*Citizenship and/or Immigration Status*: This identifies if the ~~individual~~ recipient is a U.S. citizen or immigrant.

*Sponsorship:* This identifies if an individual ~~applying or~~ receiving SNAP is known to have ~~has~~ been sponsored to enter the U.S. ~~Data should identify the name or organization of the sponsor.~~

*Zip code:* Zip code associated with the recipient's residential address.

*County:* County associated with the recipient's residential address.

~~*Residential Address*: The address the household has provided as to where they reside.~~

~~*Mailing Address:* The address the household has provided as to where they would like all correspondence sent to (if different than residential).~~

*Homeless Status*: Please include if ~~the household~~recipients are ~~is~~ identified as homeless.

*Phone Number(s)*: The contact number(s) provided by the ~~household~~ recipient as a means of contact.

*Email Address(es)*: The email address(es) provided by the ~~household~~ recipient as a means of contact.

*Unearned Income*: The total unearned income (RSDI, unemployment, child support, etc.) ~~identifies the unearned income source, pay frequency, the household member receiving the pay, and the total~~ amount ~~of income~~ budgeted to determine the SNAP allotment.

*Earned Income*: The total earned income ~~identifies the earned income source, pay frequency, the household member receiving the pay, and the total~~ amount ~~of income~~ budgeted to determine the SNAP allotment.

*Self-Employment Income*: The total ~~S~~self-employment ~~should be identified as to what the selfemployment is (type or business name), pay frequency, the household member who is~~

Ex. 12-030

selfemployed, and the total amount of income budgeted as well as the amount of allowed expenses.

*Shelter Expenses*: The total shelter expenses should be identified as to shelter type (i.e. rent), and the budgeted dollar amount. Shelter expenses may be separated out as various expenses are taken into consideration for eligibility and those should be included if used in the SNAP allotment determination (i.e. telephone, heating, cooling). If the household is active with Section 8, which pays a portion of the rental expenses, please ensure that is included.

*Assets/Resources*: Any The total known assets reported (i.ee.g.. bank accounts, boat, collector vehicle, etc.) or any resources used to determine SNAP eligibility. and must identify the asset type, amount and what household member the asset belongs to.

Ex. 12-031

Page **3** of **3**

***Sanctions/Disqualifications***: Identify any ~~household members~~recipients who are serving a sanction and/or disqualification that is impacting their eligibility to participate in SNAP. The sanction and/or disqualification type and any applicable time periods should be identified (i.e. IPV, 10/1/2024-9/30/2025). This field should correspond to the data provided in the status on SNAP if the recipient~~household member~~ is currently serving a disqualification, as well as any income field(s) that may pertain to the disqualified member due to income proration.

***SNAP EBT Card Number***: The unique set of digits on the household's issued SNAP EBT card that connects the case to the associated transactions.  For states that issue more than one card to a household, or for households where more than one recipient lives, the state need only provide the digits for the primary card issued to the household.

**Ex. 12-032**