The Office of
Minnesota Attorney General Keith Ellison
helping people afford their lives and live with dignity, safety, and respect • www.ag.state.mn.us

October 13, 2026

The Honorable Katherine M. Menendez
U.S. District Judge, District of Minnesota
Diana M. Murphy United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415

**Re:** ***United States v. Minnesota Department of Children, Youth and Families***
**Case No. 26-cv-3120 (KMM/DTS) (D. Minn.)**

Dear Judge Menendez:

Our office represents Defendants in the above-captioned case (together, "DCYF"). I write to inform the Court of supplemental authority in support of DCYF's pending stay motion. *See* ECF 35.

On the same day it filed this case, the United States filed a nearly identical lawsuit against Michigan Department of Health and Human Services and its Director. *See United States v. Mich. Dep't of Health & Human Servs.*, Case No. 1:26-cv-1950-HYJ-MV (W.D. Mich.). Earlier today, the United States District Court for the Western District of Michigan granted Michigan's motion to stay that case pending ongoing litigation between the parties in the Northern District of California and denied the United States's preliminary injunction motion as moot. *See* Ex. 1. In so doing, the court rejected the same arguments the United States has raised here in opposition to DCYF's motion.

The United States has contended that it is improper to make legal arguments in notices of supplemental authority. ECF 38.[1] Nevertheless, the United States filed arguments responding to DCYF's prior notice of supplemental authority despite the fact DCYF offered no argument in its notice. ECF 40. DCYF requests that if the Court permits the United States to submit substantive arguments concerning this supplemental authority that DCYF be permitted to do the same.

---

[1] The letter the United States complained of was a substantive update regarding the outcome of a motion in a related matter that sought substantially the same relief as DCYF's pending stay motion. *See* ECF 37.

Best regards,

**s/ Joseph Richie**
JOSEPH RICHIE
Special Counsel
Atty. Reg. No. 0400615
(651) 300-0921 (Voice)
(651) 282-5832 (Fax)
Joseph.Richie@ag.state.mn.us

Attachments
cc: Counsel of Record

# EXHIBIT 1

Case 1:26-cv-01950-HYJ-PJG ECF No. 30, PageID.802 Filed 10/14/26 Page 1 of 12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

Defendants.

_______________________________________/

Case No. 1:26-cv-1950

Hon. Hala Y. Jarbou

**OPINION**

The Food and Nutrition Act of 2008 (FNA) authorizes the United States to obtain records from states regarding their administration of the Supplemental Nutrition Assistance Program (SNAP). In May through July of 2025, the United States issued a series of records requests to all 50 states. A group of states, including Michigan, refused to comply and asserted that the requests were unlawful. Those states then sued the United States Department of Agriculture (USDA) in the Northern District of California, seeking (and ultimately obtaining) an injunction to prevent the federal government from withholding SNAP funds to enforce its requests. About a year later, with the California litigation still pending, the United States filed this lawsuit against the Michigan Department of Health and Human Services, requesting an injunction requiring Michigan to turn over the records at issue. Before the Court is Michigan's motion to stay the case under the first-to-file rule pending the outcome of the California litigation (ECF No. 24). As explained below, the Court will grant Michigan's motion.

## I. BACKGROUND

SNAP is a federally funded food assistance program that is administered by the states. The FNA, which authorizes SNAP, imposes requirements on states regarding their administration of SNAP. Among other things, it provides that "[e]ach State agency shall keep such records as may be necessary to determine whether the program is being conducted in compliance with this chapter." 7 U.S.C. § 2020(a)(3)(A). Moreover, "[a]ll records, and the entire information systems in which records are contained, that are covered in subparagraph (A) shall . . . be made available for inspection and audit by the Secretary [of Agriculture], subject to data and security protocols agreed to by the State agency and Secretary." *Id.* § 2020(a)(3)(B)(i). The statute specifies procedures by which the United States can address state noncompliance with records requests, including by withholding SNAP funds. *Id.* § 2020(g).

On May 6, 2025, the USDA sent a letter to the states notifying them of its intent to collect the following information:

> 1. Records sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers.
>
> 2. Records sufficient to calculate the total dollar value of SNAP benefits received by participants over time, with the ability to filter benefits received by date ranges.

(5/6/2025 Letter, ECF No. 1-3, PageID.45.) The USDA sent several follow-up letters in July, setting a compliance deadline of July 30, 2025. (7/9/2025 Letter, ECF No. 1-4; 7/23/2025 Letter, ECF No. 1-5, PageID.50; 7/25/2025 Letter, ECF No. 1-6.) The final letter stated that failure to provide the requested records "may trigger noncompliance procedures codified in 7 U.S.C. [§] 2020(g)." (7/25/2025 Letter, PageID.52.) Many states refused to comply on the grounds that the requests were unlawful.

On July 28, 2025, a group of noncompliant states—including Michigan—filed a lawsuit against the United States in the Northern District of California. Compl., *California v. USDA*, No. 25-cv-6310 (N.D. Cal. July 28, 2025), ECF No. 1. The states raised claims under the Administrative Procedure Act and Spending Clause, as well as claims for ultra vires agency action. The states sought a declaratory judgment that the United States' demand for records was unlawful, as well as an injunction to prevent the United States from seeking the records or initiating noncompliance procedures and to prevent the USDA from disclosing the requested records to the Department of Homeland Security or Department of Government Efficiency for any reason other than SNAP administration.

On October 15, 2025, the California court granted the states' motion for a preliminary injunction preventing the United States from withholding SNAP funding based on the states' failure to comply with the records requests. *California v. USDA*, No. 25-cv-6310, 2025 WL 2939227 (N.D. Cal. Oct. 15, 2025). The court held that § 2020(a)(3)(A) "requires USDA and a State agency to agree to data and security protocols before the State agency is required to provide the SNAP records demanded by USDA," and that the records requests were invalid because no such protocols had been agreed to. *California*, 2025 WL 2939227, at *7. The court also rejected the United States' alternative statutory basis for obtaining the records from the states. *Id.* at *10.

In November and December of 2025, the USDA sent new letters to the states demanding SNAP records and specifying data security protocols that the government would follow. (*See* 11/24/2025 Letter, ECF No. 1-9; 12/23/2025 Letter, ECF No. 1-11.) On February 26, 2026, the California court expanded its preliminary injunction to bar the United States from enforcing these new demand letters as well. *California v. USDA*, 821 F. Supp. 3d 1015, 1036 (N.D. Cal. 2026). The court held that the USDA's new demand still did not satisfy § 2020(a)(3)(A) because the states

had not agreed to the USDA's proposed security protocols, and the states' objections to those protocols were not unreasonable. *Id.* at 1028–32.

The USDA responded to this injunction by sending a new set of records requests in May of 2026, which proposed revised data security protocols. (5/15/2026 Letter, ECF No. 1-19.) The states again refused to comply with the requests. (5/22/2026 Letter, ECF No. 1-20.) The United States subsequently filed this lawsuit against Michigan for declaratory and injunctive relief under § 2020(g). That subsection provides that if a state fails to comply with a records request,

> the Secretary may refer the matter to the Attorney General with a request that injunctive relief be sought to require compliance forthwith by the State agency and, upon suit by the Attorney General in an appropriate district court of the United States having jurisdiction of the geographic area in which the State agency is located and a showing that noncompliance has occurred, appropriate injunctive relief shall issue . . . .

7 U.S.C. § 2020(g). The United States filed similar lawsuits against Kentucky, Minnesota, and Pennsylvania. *See United States v. Ky. Cabinet for Health & Family Servs.*, No. 26-cv-51 (E.D. Ky. filed June 26, 2026); *United States v. Minn. Dep't. of Children, Youth, & Families*, No. 26-cv-3120 (D. Minn. filed June 26, 2026); *United States v. Penn. Dep't of Hum. Servs.*, No. 26-cv-1787 (M.D. Pa. filed June 26, 2026).

On July 22, 2026, Michigan filed a motion in this Court to stay proceedings (ECF No. 14). At the time, the states had a pending motion in the California court to enjoin the United States from proceeding in this case based on the first-to-file rule; Michigan requested that this Court stay proceedings until that motion had been resolved. On August 7, 2026, this Court denied the motion for a stay. (8/7/2026 Order, ECF No. 22.) While the Court did not make any definitive ruling regarding the application of the first-to-file rule, it noted that the rule was potentially inapplicable because this case and the California case are not identical. It also cited an order from the related litigation in Pennsylvania, where the court had similarly denied a stay based in part on the lack of

similarity between the Pennsylvania and California lawsuits. *See* Order Denying Stay, *United States v. Pa. Dep't of Hum. Servs.*, No. 26-cv-1787 (M.D. Pa. July 28, 2026), ECF No. 16.

On August 20, 2026, the California court denied the plaintiff states' motion for an injunction preventing the United States from proceeding in this lawsuit and in the Kentucky, Minnesota, and Pennsylvania lawsuits. *California v. USDA*, No. 25-cv-6310, 2026 WL 2447539 (N.D. Cal. Aug. 20, 2026). The court held that the first-to-file rule did apply, but in the interests of comity it declined to issue an injunction prohibiting this litigation. It noted that such an injunction would be especially inappropriate given that both this Court and the Pennsylvania court had cast doubt on the idea that the first-to-file rule applied. *Id.* at *4. However, it noted "that the States remain free to bring a first-to-file motion in each of the Related Actions." *Id.*

Subsequently, the Pennsylvania court held that the first-to-file rule applied, and stayed its case pending resolution of the California case. Order Granting Stay, *United States v. Pa. Dep't of Hum. Servs.*, No. 26-cv-1787 (M.D. Pa. Sep. 28, 2026), ECF No. 30. Michigan has filed an analogous motion to stay this case under the first-to-file rule, which is now ripe for decision.

**II. ANALYSIS**

"The first-to-file rule is a prudential doctrine" that applies when two similar cases are filed in different federal courts. *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). The doctrine provides that "the court in which the first suit was filed should *generally* proceed to judgment." *Id.* Adhering to this rule promotes comity among the federal courts, avoids "duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results." *Id.* The first-to-file rule only applies when two suits are "duplicative," which means they "involve nearly identical parties and issues." *Id.* (internal quotation marks omitted). Two sets of claims are "nearly identical" when the cases are "materially on all fours and have such an identity that a determination in one action leaves little or nothing to

be determined in the other." *Id.* at 791 (internal quotation marks omitted). Even if the two cases are nearly identical, "the court must also determine whether any equitable considerations, such as evidence of inequitable conduct, bad faith, anticipatory suits, or forum shopping, merit not applying the first-to-file rule in a particular case." *Id.* at 789 (cleaned up). Ultimately, "[t]he most basic aspect of the first to file rule is that it is discretionary." *Plating Res., Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 903 (N.D. Ohio 1999).

As an initial matter, the United States contends that Michigan's motion for a stay should be denied because it is "effectively seeking reconsideration of the Court's prior order despite an absence of any material change in circumstances." (Pl.'s Opp'n Br. 1, ECF No. 28.) However, the Court's prior order did not definitively resolve the question of whether the first-to-file rule applies. The Court found that "[a]t this stage, it appears that the California case may not be 'materially on all fours' with this one." (8/7/2026 Order 3.) Since that order, the California court has weighed in on the first-to-file issue and provided this Court with more clarity regarding what legal claims will be covered in that case. The Court's prior order also stated that briefing regarding the United States' motion for a preliminary injunction should go forward for the time being, as "requiring Defendants to respond to the motion for preliminary injunctive relief in the ordinary course will not impose a great hardship." (*Id.* at 3.) Briefing on the preliminary injunction motion is now complete, and the Court has had a fuller opportunity to consider whether the entire case should be stayed. Thus, the Court will proceed to the merits of Michigan's motion.

To determine whether the first-to-file rule applies, courts look to "three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Baatz*, 814 F.3d at 789. The first factor supports application of the first-to-file rule because the California action was filed eleven months before this action. The second

factor also supports application of the rule. The parties to the two lawsuits need not be "perfectly identical" as long as they "substantially overlap." *Id.* at 790 (alteration omitted). Substantial overlap exists "if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional, unmatched parties in one or both matters." *Levang v. Kappa Kappa Gamma Fraternity*, No. 24-cv-316, 2024 WL 6048247, at *9 (S.D. Ohio Dec. 19, 2024) (alteration in original) (quoting *Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*, 42 F. Supp. 3d 1377, 1382 (S.D. Cal. 2014)). Although the California case involves states other than Michigan, the additional states have little impact on the litigation because they are all asserting the same collective claims. *See id.* (additional parties do not defeat similarity if they assert the same claims as matching parties). It is also true that the California case involves the USDA instead of the United States, and the state of Michigan instead of the Michigan Department of Health and Human Services. But this distinction is irrelevant because these agencies represent the interests of their respective governments. *See Buff City Soap LLC v. Bynum*, No. 21-2462, 2022 WL 1285045, at *5 (W.D. Tenn. Apr. 29, 2022) ("Courts generally hold that privity or affiliation between/among [parties] is sufficient to find 'substantial overlap.'"). Thus, the parties are sufficiently similar.

Moving to the third factor, the parties disagree as to how much the issues presented in the two lawsuits overlap. Both lawsuits turn on the same legal issue—namely, the scope of § 2020(a)(3)(B)(i), the provision of the FNA that permits records requests. In both cases, the outcome hinges on whether state approval of the federal government's data security protocols is necessary to enforce a records demand under the FNA, and whether the particular security protocols proposed are reasonable. However, the United States argues that the claims here and in California are not identical because the California suit addresses only the first two sets of demand letters (sent in July of 2025 and November of 2025) whereas this lawsuit addresses only the third

set of demand letters (sent in May of 2026).[1] It is true that the legal questions posed by the different demand letters are conceptually distinct, as the analysis turns on the specific protocol outlined in each letter. If the California court holds that the data security protocols in the second letter are not reasonable, that decision would not resolve the question of whether the protocols in the third letter are reasonable.

However, this distinction is only relevant in theory; as a practical matter, the California court will likely resolve the legality of the third demand letter as well. The California court has noted that, "[a]lthough the Third Data Request is accompanied by a revised protocol as to which th[e] [California] Court has not ruled, said protocol, given the evolving nature of the instant action, will, in all likelihood, be presented to th[at] Court as well." *California*, 2026 WL 2447539, at *3. Since the California court has a better understanding of the ongoing litigation there than this Court, it is prudent to defer to the California court's prediction regarding the scope of that litigation. Moreover, the third demand letter expressly provides that the first two letters are "withdrawn" and "supersede[d]." (6/26/2026 Letter, PageID.209.) It is reasonable to infer that the California litigation will focus on the third demand letter, given that any dispute regarding the first two letters seems moot. Thus, the discrepancy between the demand letters does not entail that the California and Michigan cases are distinct. *See also* Order Granting Stay 13–18, *United States v. Pa. Dep't of Hum. Servs.*, No. 26-cv-1787 (finding Pennsylvania and California cases substantially similar for first-to-file purposes).

The United States also contends that this case is distinct from the California case because here it has requested an injunction requiring the states to comply with the records demand, whereas

[1] In their initial complaint in California, the states only addressed the first set of letters; they have since filed an amended complaint that addresses the second set of letters. *See* 2d Am. Compl., *California v. USDA*, No. 25-cv-6310 (N.D. Cal. April 3, 2026), ECF No. 146.

it has not done so in California. However, the fact that these cases involve different forms of relief—an injunction against the United States preventing it from enforcing its records demand, or an injunction against Michigan requiring it to comply with the demand—does not entail that they are dissimilar. Courts frequently find cases to be nearly identical for first-to-file purposes even though they involve different forms of relief: for instance, Party A sues Party B for an injunction or damages, and Party B sues Party A for a declaratory judgment. *See, e.g.*, *Clear!Blue, LLC v. Clear Blue, Inc.*, 521 F. Supp. 2d 612, 614–16 (E.D. Mich. 2007); *Malibu Boats, LLC v. Nautique Boat Co.*, No. 13-cv-656, 2014 WL 202379, at *3 (E.D. Tenn. Jan. 16, 2014); *Encore Furniture Thrifts & More, LLC v. Doubletap, Inc.*, 281 F. Supp. 3d 665, 669 (M.D. Tenn. 2017); *see also Nat'l Union Fire Ins. Co. of Pittsburgh v. Payless Shoesource, Inc.*, No. C-11-1892, 2012 WL 3277222, at *3 (N.D. Cal. Aug. 9, 2012) ("The form of relief sought does not determine the similitude of the issues.").[2] If the California court rules for the United States, the United States can immediately move for an injunction in this Court, and the appropriateness of that injunction will be almost entirely dictated by the California court's legal conclusions. Thus, the California court's inability to issue an injunction against the states does not make the two actions meaningfully distinct.

This case is a far cry from *Smith v. S.E.C.*, 129 F.3d 356, 360 (6th Cir. 1997), cited by the United States, in which the Sixth Circuit held that a lawsuit regarding the legality of evidence collected by the government was not identical to a subsequently filed enforcement action in which the government sought to use that evidence. The court explained that the cases overlapped to some degree—both would address the legality of the evidence—but the enforcement lawsuit addressed

---

[2] Of course, a declaratory judgment suit that is filed before an anticipated coercive suit will often raise the spectre of forum-shopping, making the first-to-file rule potentially inapplicable. *See Baatz*, 814 F.3d at 789. But the issue of whether an equitable exception precludes application of the first-to-file rule is distinct from the issue of whether the two cases are sufficiently similar to invoke the rule in the first place.

an issue not present in the evidentiary lawsuit, namely, whether the defendant was liable for insider trading. *Id.* at 361. So even if the first court had held that the evidence had been legally (or illegally) collected, the second court would still have to resolve the defendant's liability, which was the key issue in the second case. Here, by contrast, if the California court decides that the third demand is valid (or invalid), the only remaining question for this Court will be the propriety of an injunction—which, again, will be largely resolved by the California court's holding. That sequence of events would be far more economical than if both courts proceeded to the merits, expending significant time and money on duplicative litigation and potentially producing conflicting rulings or contradictory injunctions.

The United States also suggests that § 2020 poses a unique obstacle to application of the first-to-file rule because Congress specifically provided for venue for an action in this Court and staying this case would "obstruct a congressionally authorized enforcement action pending before the court empowered to adjudicate it." (Pl.'s Opp'n Br. 11.) But nothing in § 2020(g) implies an intent to circumvent normal application of the first-to-file rule. And the venue provision in § 2020(g), which requires the United States to sue state agencies in the district where they are located, appears intended to benefit the states rather than the federal government (which is essentially at home in every state). So it is not clear that the venue provision's intent is contravened where Michigan has chosen to litigate this issue in California. Moreover, staying the case does not "obstruct" the United States' attempt at enforcement; that enforcement attempt may continue apace once a final ruling is issued by the California court—which, it is worth noting, is further along in its case and should reach a judgment significantly before this Court would.

Of course, the quickest way for the United States to enforce its records request would be to obtain a preliminary injunction from this Court—an option that will be foreclosed by a stay of

this case. But the United States does not explain why it cannot raise a counterclaim in the California court and seek preliminary injunctive relief there.[3] Indeed, in a hearing before the California court, the United States indicated that it planned to bring a counterclaim seeking "affirmative relief." (4/15/2026 Cal. Hr'g Tr. 19, ECF No. 23-5.) Thus, the Court is unpersuaded by the United States' assertion that maintaining this separate action is necessary to expeditiously obtain the records it has demanded.

In sum, because the California litigation will likely resolve the core legal issue presented here—namely, whether the data security protocols proposed in the third letter are reasonable—the cases are substantially identical, such that resolution of one will leave almost nothing to resolve in the other. *See Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 690 (E.D. Tenn. 2005) (first-to-file rule applies where "crucial issue in both cases" is the same); *Aero Advanced Paint Tech., Inc. v. Int'l Aero Prods., LLC*, 351 F. Supp. 3d 1067, 1072 (S.D. Ohio 2018) (first-to-file rule applies where claim "at the heart of both cases" is the same). The United States does not assert that any equitable exceptions counsel against application of the first-to-file rule, and the Court does not find any to be relevant. Although courts will often decline to apply the rule when the first-filed suit is a declaratory judgment action intended to preempt an anticipated coercive suit, *see Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007), the California plaintiffs sought injunctive rather than merely declaratory relief, and there is no evidence that they sued in anticipation that this suit would be filed almost a year later.

[3] It is true that § 2020(g) contains a venue provision requiring the United States to sue Michigan in this district. But venue limitations do not generally apply to counterclaims, because a plaintiff waives any venue-related objections by suing the defendant in a given forum. *Gen. Elec. Co. v. Marvel Rare Metals Co.*, 287 U.S. 430, 435 (1932). Admittedly, a counterclaim under § 2020(g) may be somewhat procedurally awkward, given that the statute provides an enforcement mechanism for records requests rather than a more traditional right of action. But again, the United States has not contended that it is unable to bring a counterclaim under § 2020(g) (it has in fact implied the opposite), and the Court will not make such an argument on its behalf.

Finally, the United States argues that the Court should deny Michigan's motion because the state has not shown that "a clear case of hardship or inequity" would result from the absence of a stay. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). While this standard applies to certain requests for stays, it is inapposite when granting a stay pursuant to the first-to-file rule, which is grounded in comity and efficiency rather than the individual interests of the parties. In fact, "deviations from the [first-to-file] rule should be the exception, rather than the norm." *Baatz*, 814 F.3d at 792. Case law implies that the presence of duplicative claims and parties is sufficient to invoke the first-to-file rule—no hardship analysis is necessary. *See id.* at 789. The Court therefore finds that the first-to-file rule applies, and that a stay of this action is warranted. *See id.* at 793 (staying second-filed case is one way to enforce first-to-file rule).

An order will enter in accordance with this Opinion.

Dated: October 13, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

Defendants.
_______________________________________/

Case No. 1:26-cv-1950

Hon. Hala Y. Jarbou

**ORDER**

In accordance with the opinion entered this date:

**IT IS ORDERED** that Defendants' motion to stay the case (ECF No. 24) is **GRANTED**.

**IT IS FURTHER ORDERED** that all proceedings in this case are **STAYED** pending the outcome of *California v. USDA*, No. 25-cv-6310 (N.D. Cal. filed July 28, 2025). Within seven days of a final judgment or settlement in that case, Plaintiff shall file a status report in this case indicating whether it intends to proceed with this litigation.

**IT IS FURTHER ORDERED** that Plaintiff's motion for a preliminary injunction (ECF No. 11) is **DENIED WITHOUT PREJUDICE** as moot.

**IT IS FURTHER ORDERED** that this case is **ADMINISTRATIVELY CLOSED** until further order of this Court.

Dated: October 13, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE